## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Christopher Michael Faber, having been first duly sworn, do hereby depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been so employed for over two years. I am currently assigned to the Louisville Division, Hopkinsville Resident Agency. Prior to my employment as an FBI Special Agent, I was a police officer with the St. Louis (Missouri) Metropolitan Police Department for four years.

My responsibilities include, among other things, investigating violations of federal firearms laws as set forth in Title 18, United States Code, Section 922.

2. Since this Affidavit is being submitted for the limited purpose of supporting a criminal complaint, I have not included each and every fact known to me concerning this investigation, but only those necessary to establish probable cause to believe that Aeren Jonel Rogers, born XXXXXX XX, 1991, committed acts in violation of federal law, namely 18 U.S.C. § 922(g)(1). The statements contained in this Affidavit are based, in part, on information provided by other law enforcement officers, investigation by me and on my own experience and background as a Special Agent of the FBI.

1

## DEFINITIONS

3. All references to "firearm" contained in this Affidavit are made in reliance on the definition set out in 18 U.S.C. § 921(a)(3).

## FACTS AND CIRCUMSTANCES

4. On or about December 2, 2011, U.S. Army Military Police responded to Gate 4 of Fort Campbell Military Base in Fort Campbell, Kentucky, Christian County, Kentucky, after gate security personnel detected a strange odor emanating from a vehicle attempting entry at Fort Campbell.

5. Upon arrival at Gate 4, Corporal Justin Rogerson, Military Police, made contact with the driver of the vehicle, Raven Kevon Williams, and the single passenger, Aeren Jonel Rogers. CPL Rogerson detected a strong odor from the vehicle which he believed to be the odor of marijuana based on his law enforcement experience and training. Williams told CPL Rogerson that her fiancé, Rogers, had smoked two "blunts" (marijuana cigars) and was "baking" (smoking marijuana in a confined area) in the vehicle. Williams gave verbal consent to a search of the vehicle and the occupants exited the vehicle for the purpose of the search.

6. CPL Rogerson escorted Rogers to his patrol vehicle and informed him he would be conducting a protective pat down search of Rogers, at which time Rogers immediately slowed his walking pace. Upon arrival at the patrol vehicle, CPL Rogerson asked Rogers to empty his pockets and asked Rogers if he possessed any

items which could harm CPL Rogerson, to which Rogers answered in the negative. CPL Rogerson began conducting the pat down search, causing Rogers to blade a portion of his body away from CPL Rogerson. CPL Rogerson conducted the search and felt something abnormal in the clothing. CPL Rogerson lifted Rogers's pants and a firearm dropped out of Rogers's left pant leg and fell to the ground. CPL Rogerson placed Rogers in handcuffs, and secured the firearm, which is described as a Smith & Wesson MP, .40 caliber, semi-automatic handgun, black in color, bearing serial number DTY9883. The firearm was loaded with fifteen hollow point cartridges in the inserted magazine, however the chamber was empty. Rogers was conveyed to the Provost Marshal's Office (PMO).

7. A query of the National Crime Information Center (NCIC) database revealed the recovered firearm was reported stolen by Houma (Louisiana) Police Department, per report number E-50106-11, NIC number G442482441. Houma Police Department personnel confirmed that the firearm was stolen from a vehicle in Houma, Louisiana, and that the aforementioned firearm was the issued service weapon of a Deputy with the Terrebonne Parish (Louisiana) Sheriff's Office.

8. Rogers was advised that he would be issued a court summons for Possession of a Concealed Weapon and Possession of Stolen Property. During the course of the conversation Rogers stated that he would have used the weapon on CPL Rogerson and ran but he did not want to endanger his girlfriend and did not know the area.

9. FBI agents (including Affiant) interviewed Rogers on December 3, 2011. Rogers stated he had traveled from New Orleans, Louisiana, to Fort Campbell, Kentucky with his fiancé, Williams, on November 30, 2011, in Williams's personal vehicle. Rogers brought the aforementioned firearm with him from Louisiana, claiming he was not familiar with the Fort Campbell area and possessed the firearm for personal protection. Rogers stated he carries a firearm sometimes while in Louisiana for protection. Rogers claimed he obtained the firearm approximately two weeks ago from a female drug addict, identified only as "Gayle", who resides in the area of Bruxelles Street in New Orleans. Rogers had loaned "Gayle" $200 USD, and when "Gayle" had been unable to repay Rogers, she offered to exchange the firearm in forgiveness of the loan. Rogers stated he did not know how "Gayle" obtained the firearm and he did not ask her. Rogers acknowledged that he thought the firearm was possibly "illegal" based on the fact that "Gayle" was addicted to narcotics; no paperwork was completed during the transfer of the firearm; and because Rogers believed the firearm was worth substantially more than $200. When asked what he meant when he described the firearm as possibly "illegal", Rogers replied that the firearm was possibly "hot" or had been involved in a murder.

10. On December 2, 2011, Rogers also stated he smoked a marijuana blunt in Williams's vehicle prior to their attempt to enter Fort Campbell via Gate 4. Rogers and Williams were detained at the Gate by security personnel due to the

detection of the odor of marijuana and Williams consented to a search of her vehicle. Rogers initially had the firearm concealed in his waistband at his right hip; however, prior to the vehicle search, he relocated the firearm to his left hip because he wanted to better conceal the firearm from the view of law enforcement personnel who would approach the vehicle from his right side, as he was seated in the front passenger seat of the vehicle. Rogers exited the vehicle and a law enforcement officer conducted a pat down search and located the firearm concealed in the area of his left ankle. Rogers claimed he had let the firearm drop from his waistband to his ankle because he did not want the officer to think he was going to attack him. Rogers stated he did not leave the firearm in the vehicle because he did not want Williams to get in trouble for possession of the firearm.

11. Rogers acknowledged he had been previously convicted of two felony charges at the age of eighteen. Rogers was charged and convicted of felony Unauthorized Use of a Motor Vehicle in the state of Louisiana. Rogers stated he had been operating a stolen motor vehicle. Rogers was charged and convicted of felony Possession of Marijuana in the state of Louisiana. Rogers stated he was found in possession of approximately one half ounce of marijuana. Rogers was sentenced to one year of probation and is currently serving out this probation. Rogers further stated he was involved in the sale of crack cocaine for a few months period while he was in high school and sold crack cocaine in "8-ball" (one eighth ounce) quantities.

12. A review of an NCIC criminal history inquiry for Rogers revealed an active one year felony probation from Louisiana Department of Corrections, Probation and Parole, beginning July 28, 2011 and ending July 28, 2012, for Unauthorized Use of Motor Vehicle.

### Conclusion

Based upon all of the information set forth herein, your Affiant respectfully submits that there is probable cause to believe that while in Christian County, Kentucky, which is in the Western District of Kentucky, Aeren Jonel Rogers: on or about December 2, 2011 was knowingly in possession of a firearm, as defined in 18 U.S.C. § 921(a)(3); which traveled in interstate commerce; and at the time Rogers knowingly possessed the firearm in the state of Kentucky; he had previously been convicted of felony punishable by imprisonment of more than one year.

_____

Christopher Michael Faber

Special Agent
Federal Bureau of Investigation

Sworn to me and subscribed in my presence this ___5___ day of December, 2011.

_____

LANNY KING
United States Magistrate Judge

6